## HARRING vs. COLES.

### *In the matter of the guardianship of* HENRY COLES.

A TESTATOR gave his property equally among his children, directing that the shares of his daughters should be invested independently of any control of their husbands, but "the same shall be and accrue, solely and exclusively, to the benefit of my said daughters and their lawful issue." One of the daughters having died, leaving six children surviving, *Held* that on the subsequent decease of one of the six, intestate, leaving no descendant or widow, the father, after administration, was entitled to her share.

Where the father was guardian of his children, and, possessing limited means, was compelled to labor for their support, and in consequence of the decease of their mother was put to increased expense, *Held*, that it was reasonable under the circumstances, to charge a portion of the expense for their maintenance upon the income or interest of the shares of his wards.

W. A. SEELY, *for Petitioner.*

S. W. JUDSON, *for Guardian.*

I.   Henry Coles, as sole surviving parent of Henrietta Coles, deceased, is entitled to the whole of her share of her mother's estate.   (2 *R. S., p.* 160, 3*d ed.* (*marg. p.* 97), § 79, sub. 7.

1.   A guardian has a right to appropriate the whole income of his ward towards her support, maintenance, education, &c., and this for past as well as present and future maintenance. (*In the matter of Bostwick,* 4 *John., Ch. R.,* 100 ; *Wilkes* vs. *Rogers, &c.,* 6 *Johns. R.,* 566 ; *DePeyster* vs. *Clarkson,* 2 *Wend.,* 77 ; *Hopk.,* 424 ; *In the matter of Davison,* 6 *Paige,* 136 ; *Bradley* vs. *Amidon,* 10 *Paige,* 235, 240, 242, 243 ; *In the matter of Ryder,* 11 *Paige,* 185, 187, 188 ; *In the matter of Kane,* 2 *Barbour, p.* 375 ; *Myers* vs. *Wade,* 6 *Randolph's R.,* 444 (*Va.*); *Foreman*

vs. *Murray*, 7 *Leigh.*, 412 (*Va.*); *Davis* vs. *Harkness*, 1 *Gilman*, 173 (*Ill.*); *Anderson* vs. *Thompson*, 11 *Leigh.*, 439 (*Va.*); *Jackson* vs. *Jackson*, 1 *Grattan*, 143 (*Va.*); *Hooper* vs. *Royster*, 1 *Munford*, 119 (*Va.*); *Long* vs. *Norcom*, 2 *Iredell's Ch. R.*, 354 (*N. C.*); *Whitledge* vs. *Callis*, 2 *J. J. Marshall*, 403 (*Ky.*); *Chapline* vs. *Morse*, 7 *Monroe*, 150 (*Ky.*); *Davis* vs. *Roberts*, 1 *Smedes & Marsh, Ch. R.*, 543 (*Ky.*)

2. The principal may also be appropriated towards support and maintenance; but in general, application to the court is necessary for this purpose, except under extraordinary circumstances, as will appear from the foregoing cases.

In the present case, the guardian has not expended the principal, and does not claim it.

3. A Court of Chancery has no power to order or compel a parent to support his child. (*Matter of Ryder*, 11 *Paige*, 185.)

II.    A common-law liability of a father to support his infant children, is recognized generally in the cases upon the subject; but this liability is usually limited or restricted to a *necessary* maintenance only; and in all cases an allowance out of the separate estate of the infant, is granted, unless the father has ample and unquestionable means for such support: such allowance is made, as a matter of course, out of the income of the infant's estate, but not out of the principal without application to the court.

The following cases will show the general rule of law upon the subject of a person who stands in the relationship of *father* and *guardian* to his infant children. (2 *Kent's Com.*, 7th ed., *p.* 181, 182, *marg. p.* 190, 191, 2, *notes d.*, *&c. &c.*; *Newport* vs. *Cook*, 2 *Ashmead*, 332.) The rule as to the father's obligation to support his child, has become considerably relaxed. (2 *Kent.*, 181, 190, 2 *Ashmead*, 332, 339, 340, *as above*), 2 *Barb. Ch. R.*, 375, 377,

379, 380, *In the matter of Kane.* In this case, the father was of sufficient ability, worth $25,000, resided in the country; yearly income, $500, and besides this, allowed annually by his mother, $2,000,—amount $2,500; only 2 children, pages 375, 76; decided father entitled to *some allowance*, &c., p. 381. (*Addison* vs. *Bowie*, 2 *Bland's Md. Ch. R.*, 606.) Wm. Bowie's estate, worth $22,433.33, p. 613; had three or four children, pages 608–9, 613; principal decision, p. 627. (*Cunningham* vs. *Cunningham, Virginia*, 4 *Grattan*, 43.) This was the case of a *mother.* Allowance made, although accounts not regularly kept, &c. Reasonable allowance.

1. The guardian, H. Coles, expended $1,200, principal, of his own property, over and above all his income, for the maintenance of his wards. And he has contributed towards the maintenance of the said Sarah B. Coles, now Sarah B. Harring, out of his own estate and income, in the ratio of $71 14 to $53 86.

2. There having been so many wards, in the relation also of children, namely six, and five living, is a fact to be taken into consideration before imposing upon one surviving parent, of very moderate and limited means, the whole maintenance.

3. The deceased wife of Henry Coles, never having enjoyed or derived any income from her father's estate, it is but just and reasonable upon principles of equity, that the income therefrom, after her decease, should be appropriated towards the support, &c., of her minor children and heirs-at-law, of whom the said Sarah B. Harring is one.

4. As to Commissions, see *Rapalje* vs. *Norsworthy*, 1 *Sandf. Ch. R.*, 399; *Vanderheyden* vs. *Vanderheyden*, 2 *Paige*, 287.

THE SURROGATE. Upon the settlement of the account of the guardian, some charges were objected to as improper. The guardian is the father of the ward, and sup-

ported and maintained her from the date of his appointment, October 29, .1842, to the time of her marriage. The entire estate of the daughter consisted of one-sixth of the sum of $4,937 76, that being the amount of the interest of Mr. Coles's deceased wife in the estate of her father, and which on her decease passed to her six children. The share of each child, then, was $822 96, and the interest on this about fifty-seven dollars a year. Four thousand five hundred dollars of the entire amount were secured by mortgage, given by Mr. Coles in the lifetime of his wife, to the executors of her father's estate.

1. One of the children having died intestate, under age, and without issue, it is now insisted that her share fell to her brothers and sisters. The will of William Bell, from whom this property was derived, directed the sale of his property, and the equal division of the proceeds among all his children. Then followed this clause : " It is however, my further will that the share of each of my said daughters be invested by my executors, in safe securities, for the benefit of my said daughters. It being my express intention that neither of the husbands of my said daughters shall have or exercise any control over their said respective shares, but that ·the same shall be and enure solely and exclusively to the benefit of my said daughters, and their lawful issue. And I do hereby constitute and appoint my said executors to be the trustees of the shares of my said daughters." On the supposition that it was designed by this provision to limit the estate of Mrs. Coles to a life interest, and give the fund on her decease to her issue, it is obvious that when she died each of her six children became entitled to one-sixth of the fund. On the decease of any one of the children intestate, his or her share would become the subject of administration; and then, under the statute of distributions, if the deceased left a father and no descendant or widow the father would take the whole. Where the intestate has an absolute

vested interest in a legacy, rights of succession regulated by law cannot be defeated by general expressions of a wish or intention, which the testator has neglected to carry out by force of legal limitation. In the present instance, the share of a grandchild dying intestate, under age, and without issue, might have been limited over to the brothers and sisters. This has not been done, and the share must therefore abide the course of distribution provided by law. But besides this, I think, on a fair construction, this clause of the will is not indicative of any intention to control the shares of the children, but its only design was to protect the interests of Mrs. Coles against marital interference.

2. Mr. Coles asks that an allowance be made to him for the maintenance of his children, by way of offset against the charge of interest. Under the circumstances I think it just to allow it. His means were moderate; he was compelled to labor for his livelihood, and for the support of a family of six children, deprived of a mother's care, and requiring on that account more of his time, and calling for a larger degree of expense. It appears that he reared, clothed, and educated his children in a suitable manner; and I do not think it at all unreasonable to allow a portion of the expense of their maintenance, unless there be some insuperable legal objection. The interest of the sum belonging to his children, was not sufficient for their support; and the expense of a good education alone, was enough to consume nearly the whole income of the fund, after the children had arrived at the proper age for attending school. Whether or not an allowance should be made, must depend upon a just consideration of all the circumstances, having reference primarily to the father's ability, and the extent of his fortune. (*In the matter of Kane*, 2 *Barb.*, *C. R.*, 375.) I am satisfied that, except during the last two years of his guardianship, it is just that Mr. Coles should have the interest on the share of Mrs. Harring, for her maintenance,—his ability previous to that

23

period, to support his family, being, to say the least, doubtful. He must therefore be directed to pay the principal sum, with interest from July, 1848, less the sums proved to have been paid directly on account of his ward, as testified to by her husband. Costs are not to be allowed to either party.